IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Joan Nolan and James Nolan, | ) | Civil Action No.: 4:10-cv-00501-RBH |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Seawatch Plantation Master Assocation, Inc., | ) ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a premises liability case. The matter is now before the court with Defendant's [Docket Entry 23] Motion for Summary Judgment filed on August 25, 2011. Plaintiffs Joan Nolan and James Nolan (collectively "Plaintiffs") timely filed their [Docket Entry 24] Response in Opposition to the summary judgment motion on September 12, 2011. Defendant thereafter filed its [Docket Entry 25] Reply on September 22, 2011. The court held a hearing on the matter on November 15, 2011. For the reasons set out below, the court grants Defendant's Motion for Summary Judgment.

**Background**

According to the briefs, Joan Nolan ("Mrs. Nolan") slipped and fell at the Seawatch resort while on vacation with her family. The fall occurred on July 16, 2008, after Mrs. Nolan had finished eating at the Captain's Cove Café, a restaurant in the North Tower at the resort. After exiting the restaurant into the hallway of the North Tower, Mrs. Nolan was walking on the tile floor and allegedly slipped in a puddle of water, and fell. Mrs. Nolan ultimately reported the fall to a security guard on duty at the resort. An incident report was made, which indicated that Mrs. Nolan's "cane slipped in water in front of Restrooms by Restaurant & twisted Back & hurt Knee." Incident Report

[Docket Entry 24-2]. It appears undisputed from the record that no person witnessed the fall other than Mrs. Nolan herself, and that Mrs. Nolan does not know where the water that caused her fall came from, nor does she know how long it had been present on the floor prior to her fall. *See* Def's. Memo. in Supp. [Docket Entry 23-1] at 4 (citing Mrs. Nolan's Depo.[1] at 43-47). Mrs. Nolan and her family returned home to Tennessee the day after the fall. Once home, Mrs. Nolan sought medical attention for pain she was having and was diagnosed as having a fractured hip.

On March 2, 2010, Plaintiffs filed their [Docket Entry 1] Complaint in this action. The Complaint first alleges that negligence on the part of Defendant caused Mrs. Nolan's injuries. *See* Compl. at 2. In addition, the Complaint asserts a loss of consortium claim on behalf of James Nolan ("Mr. Nolan"). *See id.* at 3. For relief, Plaintiffs seek "judgment against Defendant for actual and punitive damages." *Id.*

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences drawn from the evidence

---

[1] While the court was not provided a copy of Mrs. Nolan's deposition, in their briefings neither party appears to dispute the information Mrs. Nolan provided in that deposition.

must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986) (emphasis in original).

"[O]nce the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *See id.* Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**Discussion**

"A merchant is not an insurer of the safety of his customers, but rather owes them the duty to exercise ordinary care to keep the premises in a reasonably safe condition." *Cook v. Food Lion, Inc.*, 491 S.E.2d 690, 691 (S.C. Ct. App. 1997). "[M]erchants are not required to continuously inspect their floors for foreign substances." *Legette v. Piggly Wiggly, Inc.*, 629 S.E.2d 375, 377 (S.C. Ct. App. 2006).

To recover damages for injuries caused by a foreign substance on a merchant's premises, "the plaintiff must demonstrate either that the substance was placed there by the defendant or its agents, or that the defendant had actual or constructive notice the substance was on the floor at the time of

3

the slip and fall." *Wintersteen v. Food Lion, Inc.*, 542 S.E.2d 728, 729-30 (S.C. 2001). "The customer can establish the storekeeper's constructive knowledge of the dangerous condition by showing that the foreign substance had been on the floor for a sufficient length of time that the storekeeper would or should have discovered and removed it had the storekeeper used ordinary care." *Gillespie v. Wal-Mart Stores, Inc.*, 394 S.E.2d 24, 24-25 (S.C. Ct. App. 1990); *see also Cook*, 491 S.E.2d at 691. However, the length of time that the foreign substance has been on the floor is not a determination that can be left to speculation. *See Wimberly v. Winn-Dixie Greenville, Inc.*, 165 S.E.2d 627, 629 (S.C. 1969) ("The jury should not be permitted to speculate that [the foreign substance] was on the floor for such a length of time as to infer that defendant was negligent in failing to detect and remove it."); *see also Gillespie*, 394 S.E.2d at 25 ("[The record] does not show how long the water had been on the floor . . . [and] [t]he question of whether the water was on the floor for such a length of time as to infer that Wal-Mart was negligent in not discovering and removing it is not one that can be left to speculation."). Likewise, the mere presence of water on the floor, without more, is insufficient to establish liability. *See Gillespie*, 394 S.E.2d at 25; *see also Young v. Meeting Street Piggly Wiggly*, 343 S.E.2d 636, 638 (S.C. Ct. App. 1986) ("[A] merchant's liability may not be based solely on the presence of moisture.").

In the case at bar, the record is devoid of any allegations or evidence that Defendant placed the water at issue on the floor. As a matter of fact, it appears to be undisputed that Mrs. Nolan admitted during her deposition that she did not know where the water at issue came from.

Similarly, the record is also devoid of any evidence that Defendant had actual notice of the water on the floor. Plaintiffs have not presented the court with any evidence to show that Defendant knew the water at issue was present on the floor prior to Mrs. Nolan's fall. And, Plaintiffs do not

appear to contest the fact that Mrs. Nolan testified in her deposition that no one else witnessed her fall and she did not see any maintenance personnel in the area prior to the fall. *See* Def's. Memo. in Supp. at 3 (citing Mrs. Nolan's Depo. at 43, 46).

Because there is no evidence in the record that Defendant placed the water on the floor or had actual notice of the water on the floor, Plaintiffs must prove that Defendant had constructive notice of the water on the floor in order to hold Defendant liable. However, upon review, the court concludes that Plaintiffs have failed to establish constructive notice. As an initial matter, the mere fact that the water was located on the floor is insufficient to establish Defendant's negligence. *See Gillespie*, 394 S.E.2d at 25; *Young*, 343 S.E.2d at 638. Rather, to establish constructive notice, Plaintiffs are required to proffer evidence to show how long the water had been present on the floor prior to Mrs. Nolan's fall. *See Wimberly*, 165 S.E.2d at 629; *see also Gillespie*, 394 S.E.2d at 25. Plaintiffs have submitted no such evidence to establish the amount of time that the water had been on the floor prior to Mrs. Nolan's fall. To the contrary, Mrs. Nolan testified at her deposition that she does not know where the water originated from or how long it had been present on the floor prior to her fall. Plaintiffs also have been unable to come forward with any other evidence or witness testimony that could establish that the water had been present on the floor for any period of time prior to the fall. Because there is simply no evidence in the record to establish how long the water had been on the floor prior to Mrs. Nolan's fall, Plaintiffs have failed to meet their legal burden of showing that the water had been on the floor for "a sufficient length of time [such] that the storekeeper would or should have discovered and removed it had the storekeeper used ordinary care." *Gillespie*, 394 S.E.2d at 25.

Plaintiffs argue that Defendant should be found negligent for failing to place mats near the

entrance/exit doorway to the North Tower's hallway, in which Mrs. Nolan's fall occurred. *See*, *e.g.*, Pls'. Resp. in Opp. at 3 ("There is an entrance/exit door that leads to an outside deck which has access to a pool and the beach. There is consistent traffic in and out of this exit. If water is tracked inside, mats should have been placed at both the outside deck and the main entrance exit." (citing Expert Report [Docket Entry 24-1])). This argument is flawed. Plaintiffs improperly assume that the water that caused Mrs. Nolan's fall was "tracked in" from the resort's outdoor pool.[2] To argue as much is speculative, at best. As an initial matter, Counsel for Defendant represented to the court at the hearing that the pool was actually located a level below the floor of the North Tower where Mrs. Nolan's fall occurred, and Plaintiffs' Counsel did not appear to contest this fact.[3] Moreover, not only did Mrs. Nolan testify that she does not know where the water came from, but Plaintiffs' own expert report even reveals the unknown nature of the water's origin. The report states merely that "*If* water is being tracked in from the outside, a walk-off mat could be installed . . . ." Expert Report at 3 (emphasis added). Similarly, the incident report that Plaintiffs submitted to the court states that Mrs. Nolan's "cane slipped in water in front of Restrooms by Restaurant . . . ." Without

---

[2] The court is aware that the South Carolina Supreme Court has stated that some "conditions [can be] of such a recurrent nature that the defendants [can be] chargeable with constructive notice on the date of [an] accident. Although mere recurrence alone is insufficient to establish constructive notice, . . . where[] the recurrence is of such a nature as to amount to a continual condition, and that factor . . . [is] coupled with other evidence, such as store employees' knowledge thereof," it may be possible to prove a defendant's constructive notice. *Wintersteen*, 542 S.E.2d at 730 n.1 (citing *Henderson v. St. Francis Cmty. Hosp.*, 399 S.E.2d 767 (S.C. 1990)). To any extent that Plaintiffs are asserting such an argument in this case as to "tracked in" pool water, the argument must fail. Plaintiffs have submitted no evidence to establish that pool water is "recurrently" or continuously tracked in to the hallway where Mrs. Nolan fell, nor have they submitted any evidence that shows Defendant's knowledge of such a "continual condition." Rather, as thoroughly discussed in this Order, there is not even evidence to establish that the water on the date in question was "tracked in" pool water. Accordingly, Defendant cannot be charged with constructive notice on this basis.

[3] The court does note that Plaintiff's Counsel also represented to the court that while the pool and hallway were on two different levels, a deck does lead directly from the lower-level pool to the entrance/exit of the hallway where the fall occurred.

more, it is impossible for the court to determine the origin of the at-issue water. It is just as likely, based on the limited evidence before the court, that the water could have come from another person exiting either the restrooms near the restaurant or the restaurant itself.[4]

Moreover, our case is distinguishable from the *Felder*[5] and *Leggette*[6] cases that Plaintiffs argue are controlling. In both of those cases, it had been raining heavily on the date in question, and the plaintiff slipped on rainwater and fell while entering/exiting the storefront. In determining whether any liability existed, the South Carolina courts looked at whether the defendants "took reasonable precautions to provide safe premises for [their] customers," such as any warning cones or mats near the store entrances. *Leggette*, 629 S.E.2d at 377. Here, on the other hand, we do not know if Mrs. Nolan's fall even occurred near the entrance/exit doorway of the North Tower. The evidence establishes only that the fall occurred in the hallway in the North Tower, "in front of Restrooms by Restaurant." Incident Report. Neither party has provided the court with any evidence that tends to establish the location of the fall relative to the entrance/exit doorway of the North Tower. Likewise, as discussed above, the evidence also fails to establish the origin of the water that caused Mrs. Nolan's fall. Plaintiffs attempt to equate "tracked in" pool water with the rainwater from *Felder* and *Leggette*. However, in those cases cited by Plaintiffs it was clear that the water creating the hazardous conditions was rainwater "tracked in" from the oustide. In our case, there is no evidence to establish where the water at issue came from. Rather, as noted above, the water could have come from a third party that had recently exited either the restrooms or the restaurant.

---

[4] For example, Counsel for Defendant argued at the hearing that the water just as likely could have come from some other person that walked out of the restaurant with a glass of water in his or her hand.

[5] *Felder v. K-Mart Corp.*, 377 S.E.2d 332 (S.C. 1989).

[6] *Leggette*, 629 S.E.2d 375.

Accordingly, the court agrees with Defendant that our case is more in-line with the *Wintersteen*[7] case, in which the South Carolina Supreme Court stated as follows:

> We find a very legitimate basis for adherence to our traditional slip and fall analysis. In such cases, although there may be a foreseeable risk that substances will wind up on the floor, there is no specific act of the defendant which causes the substance to arrive there, i.e., it generally arrives there through the handling of a third party. To require shopkeepers to anticipate and prevent the acts of third parties is, in effect, to render them insurers of their customers' safety. This is simply not the law of [South Carolina].

*Wintersteen*, 542 S.E.2d at 731.

In sum, there is no evidence in the record to establish that Defendant created the hazardous condition, or had actual or constructive notice of the water on the floor at the time of the fall. Therefore, summary judgment should be granted in favor of Defendant.[8]

---

[7] In *Wintersteen*, 542 S.E.2d 728, the plaintiff "slipped and fell on a puddle of clear liquid in a Food Lion grocery store. She was walking near a self-service soda fountain equipped with an ice dispenser when the fall occurred." *Id.* at 729. The plaintiff argued that "if it is foreseeable that an item will fall on the floor, then the storekeeper has a duty to minimize such risks and take measures to prevent the items from falling." *Id.* at 730. The South Carolina Supreme Court specifically "decline[d] to depart from [its] traditional 'foreign substance' analysis [and] . . . adhere[d] to prior precedent that a storekeeper is liable only upon a showing that it actually placed the foreign substance on the floor, or that it had actual or constructive notice thereof." *Id.*

[8] Defendant also moved for summary judgment on the basis of lack of ownership. Specifically, Defendant argued that it "ha[d] no liability, as [it] did not own, maintain nor control the premises in question, [and] thus there [was] no duty imposed upon [it] to warn the Plaintiff of any potential defective condition, nor correct any potential defective condition." Def's. Memo. in Supp. at 7. As support, Defendant filed the [Docket Entry 23-2] Affidavit of Kim Tankersley, Defendant's general manager, in which Tankersley averred that Defendant "exercised no control over the area of th[e] alleged fall, and performed no maintenance nor cleaning there, as it was not property owned by [Defendant]." Tankersley Aff. at 1. Further, Tankersley stated that "the area where [Mrs. Nolan] fell [was] property owned by Seawatch Resorts, LLC." *Id.* In light of Tankersley's undisputed Affidavit, it would appear to the court that Defendant did not, in fact, own or control the area where Mrs. Nolan's fall occurred and, thus, did not owe her any duties under the law. However, Plaintiffs have raised estoppel arguments and contend that they were not informed of the ownership issue, and the identity of the proper defendant, until after the statute of limitations on their claims had expired. Notably, Plaintiffs' Counsel represented to the court at the hearing that he received a letter from Defendant or Defendant's insurance carrier in October of 2008, shortly after Mrs. Nolan's fall, indicating that Defendant was undertaking the representation of this case. At the summary judgment hearing, Counsel for both parties represented to the court the following relevant timeline of events: Mrs. Nolan's fall occurred on July 18, 2008; Plaintiffs' Counsel received the letter in October 2008 from either Defendant or Defendant's insurance carrier indicating that Defendant was

**Conclusion**

Based on the foregoing, it is therefore **ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**, and this case is hereby **DISMISSED** *with prejudice*.

**IT IS SO ORDERED.**

                                        s/R. Bryan Harwell
                                        R. Bryan Harwell
                                        United States District Judge

Florence, South Carolina
November 23, 2011

---

undertaking the representation of this case; Plaintiffs filed suit against Defendant on March 2, 2010; Defendant took the deposition of Mrs. Nolan in March 2011; shortly thereafter Counsel for Defendant provided Mrs. Nolan's deposition testimony to Defendant's general counsel; Defendant's general counsel pulled the master deed in the Summer of 2011 and determined that Defendant did not own the area where Mrs. Nolan's fall occurred; the statute of limitations for Plaintiffs' claims expired in July 2011; and Counsel for Defendant notified Plaintiffs' Counsel of the ownership issue after Defendant's general counsel informed Defendant's current counsel of the issue in August 2011. The court notes that it has not been provided with an affidavit or deposition of Defendant's general counsel regarding this time-line and its discovery of the ownership issue. Regardless of these issues relating to ownership and whether Defendant owed any duties to Plaintiffs, and the estoppel issues, summary judgment should still be granted in Defendant's favor because, as discussed above, Plaintiffs have failed to show that Defendant created the hazardous condition that caused Plaintiffs' injuries, or had constructive or actual notice thereof.